2014 COA 137M

**Norma Patricia HOFF, Petitioner,**

**v.**

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado; Hernan Hernandez; MDR Roofing, Inc.; Alliance Construction & Restoration, Inc.; and Pinnacol Assurance, Respondents.**

Court of Appeals No. 13CA1798

Colorado Court of Appeals,
Div. II.

Announced October 9, 2014

As Modified on Denial of Rehearing
January 15, 2015

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2013.

Industrial Claim Appeals Office of the State of Colorado, WC No. 4–850–627–03

Scott A. Meiklejohn, LLC, Scott A. Meiklejohn, Denver, Colorado; Law Office of Worstell & Associates, David Worstell, Denver, Colorado, for Petitioner.

No Appearance for Respondents Industrial Claim Appeals Office; Hernan Hernandez; MDR Roofing, Inc.; and Alliance Construction & Restoration, Inc.

Harvey D. Flewelling, Denver, Colorado, for Respondent Pinnacol Assurance.

Opinion by JUDGE DAILEY

¶ 1 In this workers' compensation insurance coverage dispute, petitioner, Norma Patricia Hoff, seeks review of a final order of the Industrial Claim Appeals Office (Panel) affirming the order of an administrative law judge (ALJ). The ALJ's order awarded claimant, Hernan Hernandez, medical and disability benefits, and held Hoff (a statutory employer), MDR Roofing, Inc. (MDR) (claimant's direct employer), and the general contractor, Alliance Construction (Alliance), jointly liable for claimant's benefits. The Panel held that Hoff lacked standing to challenge the ALJ's ruling that MDR was not covered by an insurance policy issued by Pinnacol Assurance (Pinnacol) to MDR when claimant sustained serious work-related injuries.

¶ 2 We conclude that Hoff has standing.[1] We also conclude as a matter of law that the cancellation provision of the certificate of insurance issued by Pinnacol's agent required that notice of cancellation be given to Alliance, and that no such notice was given.[2] We finally conclude that there are issues of fact that the ALJ must address in applying the law and, thus, a remand is required.[3] In addition, the Panel misconstrued the applicable law concerning estoppel; thus, we correct that interpretation. Accordingly, we set aside the Panel's order as it relates to the liability of Hoff and Pinnacol, and remand for further proceedings.

## I. Background

¶ 3 Hoff owns a house that she uses as a rental property. After sustaining hail damage to the roof, Hoff and her husband engaged Alliance to negotiate with their insurance company to resolve their damage claim. Following a successful resolution, she and her husband contracted with Alliance to repair the roof. Without the Hoffs' knowledge, Alliance verbally subcontracted the roofing job to MDR. Claimant was employed by MDR as a roofer.

¶ 4 While working on the Hoff roof in March 2011, claimant fell approximately twenty-five feet to the ground from the top of a ladder, sustaining serious injuries.

¶ 5 Claimant sought medical and temporary total disability (TTD) benefits for his work-related injuries. However, Pinnacol, MDR's insurer, denied the claim because MDR's policy had lapsed for failure to pay the premiums. Neither Alliance nor Hoff carried workers' compensation insurance.

¶ 6 The following facts are pertinent to the coverage issue. In October 2010, before starting the roofing job on the Hoff property, Alliance obtained a certificate of insurance (certificate) from Pinnacol's agent, Bradley Insurance Agency (Bradley), which verified that MDR had worker's compensation insurance through Pinnacol.

¶ 7 On February 10, 2011, Pinnacol sent a certified letter to MDR advising it that the policy was going to be cancelled if payment of a past due premium was not received by March 2, 2011. A relative of MDR's owner signed for the letter. However, MDR's owner testified he never received the letter and

---

1. This division is unanimous that Hoff has standing.

2. Judge Dailey and Judge Berger concur in this holding. Judge Casebolt dissents for the reasons set forth in his concurring and dissenting opinion.

3. Judge Dailey and Judge Casebolt concur in this remand. Judge Berger dissents from this remand for the reasons set forth in his concurring and dissenting opinion.

was not informed of its delivery. A copy of the letter was also mailed to and received by Bradley, as evidenced by the entry in Bradley's computerized log of events. Alliance did not receive notice of the pending cancellation of MDR's workers' compensation insurance from Bradley or Pinnacol.

¶ 8 MDR did not pay the outstanding premium. The policy was therefore cancelled effective March 3, 2011. Pinnacol sent letters to MDR and Bradley advising of the policy's cancellation, but not to Alliance.

¶ 9 Claimant was injured on the job on March 10, 2011. On March 11, 2011, MDR's owner went to Bradley's office seeking to reinstate the policy. The agent advised him that the policy could be reinstated if he paid the past due premium, paid a reinstatement fee, and signed a no-loss letter. A no-loss letter is a statement by the insured that no injuries have occurred since the cancellation of the policy. Although the owner knew claimant had been injured since the policy's cancellation, he signed and submitted the no-loss letter. He did not inform Bradley about the accident.

¶ 10 Pinnacol reinstated the policy on March 11, 2011. Shortly thereafter, MDR's owner returned to Bradley's offices to report claimant's injuries. Bradley contacted a Pinnacol underwriter to advise her of the claim. Pinnacol contested the claim on coverage grounds, and subsequently cancelled the policy.

¶ 11 After conducting a hearing on the matter, the ALJ determined that the owner's failure to disclose claimant's injuries when he signed the no-loss letter to reinstate the policy was a material misrepresentation. He further found that the reinstated policy was void because of MDR's misrepresentation. Finding claimant was temporarily and totally disabled and concluding that no workers' compensation insurance policy was in effect insuring any of them, the ALJ held MDR, Alliance, and Hoff jointly liable for claimant's medical and TTD benefits. The Panel agreed and affirmed.

¶ 12 Hoff now appeals.[4] She contends that Pinnacol is estopped from denying benefits to claimant because

● Bradley, acting as Pinnacol's agent, issued the certificate to Alliance;

● the issuance of the certificate obligated Pinnacol or Bradley to notify Alliance that MDR's policy was being cancelled; and,

● she and Alliance relied on the certificate; and

● neither Bradley nor Pinnacol sent notice of cancellation to Alliance.

¶ 13 Pinnacol contends that we need not reach this issue because Hoff has no standing to challenge the cancellation of MDR's policy. Addressing, first, the issue of standing, we reject Pinnacol's argument. Addressing Hoff's contention, we agree in part, and remand the matter to the ALJ for further consideration.

## II. Standing

¶ 14 As Pinnacol points out, we lack jurisdiction to decide an issue unless the party seeking review has standing to assert it. *See Ainscough v. Owens*, 90 P.3d 851, 855 (Colo.2004) ("In order for a court to have jurisdiction over a dispute, the plaintiff must have standing to bring the case. Standing is a threshold issue that must be satisfied in order to decide a case on the merits."). If Hoff lacks standing to challenge Pinnacol's cancellation procedures then her "case must be dismissed." *First Comp Ins. v. Indus. Claim Appeals Office*, 252 P.3d 1221, 1222 (Colo.App.2011).

¶ 15 To establish standing, a plaintiff must demonstrate (1) that she has sustained an injury in fact, and (2) that the injury is to a legally protected interest. *Id.* at 1223; *see also City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 437 (Colo.2000). "Whether the plaintiff's alleged injury was to a legally protected interest 'is a question of whether the plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation.'" *Barber v. Ritter*, 196 P.3d 238, 246 (Colo.2008) (quoting *Ains-*

---

4. MDR and Alliance have not appeared in this appeal.

*cough*, 90 P.3d at 856). The question of "[w]hether a plaintiff has standing to sue is a question of law that we review de novo." *Id.* at 245.

¶ 16 The first prong of the standing test is met in this case. The liability imposed on Hoff by the ALJ and the Panel exceeds $300,000. Neither Alliance nor MDR has appeared in this court, and it is unclear from the record whether either is able to compensate claimant for his medical expenses and lost wages. But even if MDR and Alliance are able to contribute, unless Pinnacol is held liable for claimant's benefits, a substantial liability must be borne by Hoff. Therefore, Hoff has demonstrated sufficient injury in fact to satisfy this requirement. *See O'Bryant v. Pub. Utils. Comm'n*, 778 P.2d 648, 653 (Colo.1989) ("[T]he injury-in-fact element of standing does not require that a party undergo actual injury, as long as the party can demonstrate that the administrative action 'threatens to cause' an injury-in-fact.").

¶ 17 The second prong of the standing test asks whether the plaintiff's alleged injury is to a legally protected interest. In concluding that Hoff did not have standing, the Panel relied on *First Comp*, 252 P.3d at 1224. There, the court held the insurer of a statutory employer liable for the decedent's funeral expenses. The insurer for the decedent's direct employer, Pinnacol, had cancelled the direct employer's policy for nonpayment of premium. Relying on *Chevron Oil Co. v. Industrial Commission*, 169 Colo. 336, 456 P.2d 735 (1969), a division of this court held that the statutory employer's insurer, First Comp, could not challenge Pinnacol's cancellation procedures because it was "outside the class of entities and persons the cancellation requirements are arguably intended to protect." *First Comp*, 252 P.3d at 1224.

¶ 18 In *Chevron*, the supreme court had held that workers' compensation insurance cancellation procedures are "for the protection of the claimant entitled to compensation." *Chevron*, 169 Colo. at 342, 456 P.2d at 738. Thus, another insurer or party, who could become liable for workers' compensation if the policy of the direct employer lapsed for nonpayment of premium, "is . . .

not a proper party to complain of non-compliance" with the statutory cancellation procedures. *Id.* at 342–43, 456 P.2d at 738.

¶ 19 Both *First Comp* and *Chevron* are distinguishable from this case. Hoff does not contend that she has standing to claim that Pinnacol breached the cancellation provisions of the policy that it issued to MDR, or that Pinnacol violated the statutory cancellation mandates set forth in section 8–44–110, C.R.S.2014. If she had so claimed, both *First Comp* and *Chevron* would be dispositive of the standing issue. Instead, Hoff contends that she is a beneficiary of specific promises (external to the Pinnacol policy) made by Pinnacol or Bradley, its agent, to Alliance (and thus indirectly to her) that there was a workers' compensation policy issued to MDR that was in force on the dates stated in the certificate. Thus, the source of Hoff's claim for relief is neither the Pinnacol policy, nor the Workers' Compensation Act (Act) itself, but promises allegedly made by Pinnacol or its agent to Alliance. This claim arises independently of any provisions of the Pinnacol policy or of the requirements of the Act, and thus this case is distinguishable from the claims adjudicated in both *First Comp* and *Chevron*.

¶ 20 Additionally, *First Comp* and *Chevron* are distinguishable because, unlike the parties in those cases, Hoff is not an insurer. First Comp sued Pinnacol directly in the former case, and in *Chevron*, "[t]he sole question at issue [was]: Which of the insurers [was] liable for the payment of benefits." *Chevron*, 169 Colo. at 339, 456 P.2d at 736. Here, the Act anticipates that Hoff, as a statutory employer, is a party who must carry insurance. Indeed, it anticipates her inclusion within the group protected by workers' compensation insurance by requiring persons who contract for the performance of construction work to either have workers' compensation insurance or require proof of such insurance by obtaining a certificate of insurance from their contractor. *See* § 8–41–404(1)(a), C.R.S.2014; *see also* § 8–40–102(1), C.R.S.2014 (stating the intent of the General Assembly that the Act be interpreted so as to assure benefits to injured workers "at a reasonable cost to employers").

¶ 21 Because the legislature intended that the Act not only protect and compensate workers but also protect remote employers, Hoff falls within the scope of persons or entities the Act covers, whereas the insurance companies in *First Comp* and *Chevron* did not. Accordingly, the question whether Hoff has standing to assert the claim that Pinnacol is estopped from denying coverage is not governed by the principles set forth in *First Comp* and *Chevron*.

¶ 22 The substantive claim asserted by Hoff is promissory estoppel. In *Vigoda v. Denver Urban Renewal Authority*, 646 P.2d 900, 905 (Colo.1982), the supreme court adopted the principles articulated in section 90(1) of the Restatement (Second) of Contracts, and thus recognized the quasi-contractual claim of promissory estoppel. The doctrine of promissory estoppel "encourages fair dealing in business relationships and discourages conduct which unreasonably causes foreseeable economic loss because of action or inaction induced by a specific promise." *Kiely v. St. Germain*, 670 P.2d 764, 767 (Colo.1983). Section 90(1) of the Restatement provides:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee *or a third person* and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts § 90(1) (1981) (emphasis added).

¶ 23 An indirect beneficiary of a promise, such as Hoff, may assert a promissory estoppel claim. *See Galie v. RAM Assocs. Mgmt. Serus., Inc.*, 757 P.2d 176, 178 (Colo.App.1988) ("[T]hird [parties], whom the promisor should reasonably expect to act as a result of the promise, may recover for a breach of that promise."). While Pinnacol may not have known Hoff's identity, it is certainly charged with knowledge that under the Act, a person may be liable for workers' compensation benefits for a worker on a construction project if the contractors in the chain of the work do not obtain the requisite coverage and thus fail to comply with the Act. See § 8–41–402, C.R. S 2014. Thus, it was foreseeable that the owner of the property, whether or not known to Pinnacol, might rely upon the certificate.

¶ 24 Consequently, the facts of this case are sufficient to confer standing upon Hoff because she has a claim for relief under the common law and thus her injury in fact is to a legally protected interest. Whether Hoff can prove her claim of promissory estoppel is a separate question; we must not conflate the requirement for standing with a determination of the merits of the claim. *See In re B.B.O.*, 2012 CO 40, ¶ 14, 277 P.3d 818.

## III. Promissory Estoppel

¶ 25 Having determined that Hoff has standing to assert that Pinnacol is estopped from denying coverage for claimant's injuries, the next question is whether a remand is required. Hoff contends that the facts are essentially undisputed and that we should hold, as a matter of law, that Pinnacol is estopped. For a number of reasons, we disagree.

### A. Issue of Law or Issue of Fact?

¶ 26 First, whether the elements of promissory estoppel have been proved generally presents a question of fact for the fact finder to resolve. *See Alexander v. McClellan*, 56 P.3d 102, 106 (Colo.App.2002). Further, where more than one inference could be drawn from evidence adduced at a hearing, the issue must be determined by the trier of fact and cannot be determined as a matter of law. *Reynolds v. Farber*, 40 Colo.App. 467, 471, 577 P.2d 318, 320 (1978).

¶ 27 Here, the ALJ made no findings whatsoever concerning estoppel, although the Panel concluded that Hoff had properly raised that issue. In our view, except as set forth below, the ALJ should first address the issue as the fact finder, especially because determining which of several inferences might be drawn from the evidence may prove crucial in deciding whether Hoff prevails on her promissory estoppel claim.

### B. What Law Should Be Applied?

¶ 28 Second, even though the ALJ did not make any findings relative to estoppel, the Panel stated that

[N]o evidence was introduced substantiating Hoff's insinuation that she relied upon a certificate of insurance issued by Pinnacol regarding MDR's insurance coverage. In his order the ALJ instead found that a certificate of insurance was requested by, and provided to, the general contractor, Alliance, from Bradley.... The ALJ made no finding that a certificate of insurance was requested by Hoff from Pinnacol or that one was issued to Hoff from Pinnacol or from Bradley, on behalf of Pinnacol.... Hoff testified she never had heard of MDR prior to the claimant's fall. Hoff testified she had no idea that Alliance was not going to perform the actual roofing work ... but, rather, she thought Alliance would be doing the work....

[B]oth promissory estoppel and equitable estoppel require proof of a reasonable and detrimental reliance by one party on a representation by another party which was made with the intent of inducing action or forbearance. Since Hoff does not allege, and there is no evidence demonstrating that a certificate of insurance was issued to Hoff by Pinnacol or Bradley ... then the elements of reliance and promise cannot be shown.

¶ 29 But there are several problems with the Panel's view of the law. Whether Pinnacol or Bradley (as Pinnacol's agent)[5] should have reasonably expected any promises set forth in the certificate to induce action or forbearance could relate to *either* Alliance *or* Hoff. *See Galie,* 757 P.2d at 178 (third parties, whom the promisor should reasonably expect to act as a result of the promise, may

recover). Hoff might be the indirect beneficiary (a third person, as noted in *Galie*) of the promise, or Alliance could be the beneficiary, acting as Hoff's agent. Thus, contrary to the Panel's view, Hoff does not need to demonstrate that the certificate was issued to her or that she personally relied on it.

¶ 30 In addition, the Panel's statement that a representation must be made by another party with the intent of inducing action or forbearance is incorrect. Actual intent is not required. Instead, the test is whether the promisor reasonably should have expected that the promise would induce action or forbearance by the promisee. *Kiely,* 670 P.2d at 767; Restatement (Second) of Contracts § 90(1).

### C. Promises and Disclaimers

¶ 31 We also conclude that, as a matter of law, (1) the certificate required notice to Alliance; and (2) the disclaimers and exculpatory language in the certificate are invalid.

¶ 32 Alliance indisputably sought and obtained a certificate from Pinnacol's agent to protect itself and its customer, Hoff, from precisely the type of liability that has been assessed against Hoff by the Panel.

¶ 33 The legal meaning of the certificate, like any other legal writing, is a question of law. *Colo. Div. of Ins. v. Auto–Owner's Ins. Co.,* 219 P.3d 371, 376 (Colo. App.2009).

¶ 34 The certificate, on its face, states that it was issued to Alliance. Directly adjacent to the portion of the certificate in which Alliance's name is affixed, there is a provision that addresses notification of any attempted cancellation of the policy. That provision

---

5. At the hearing before the ALJ, Pinnacol's own employee, an underwriter for the company, testified that Bradley had the authority to issue certificates of insurance on Pinnacol's behalf. No contrary evidence appears in the record. Notwithstanding this unequivocal testimony, Pinnacol raised for the first time in this case in its Petition for Rehearing the possibility that there may be some dispute as to whether Bradley was Pinnacol's agent in the issuance of the certificate. Even then, Pinnacol does not expressly state that Bradley was not its agent, not does it point to anywhere in the record where it disputed Bradley's authority to issue the certificate. By statute, a "broker [who] ... acts or aids in ... soliciting, negotiating or procuring the making of any insurance contract on behalf of an insured," § 10-4-1201(7), C.R.S. 2014, "shall be regarded as representing the insurer and not the insured ... § 10-2-104(1), C.R.S. 2014. In our view, the record establishes, as a matter of law, that Bradley was Pinnacol's agent when it issued the certificate.

reads as follows: "SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS."

¶ 35 The cancellation provision does not specify to whom notice of cancellation must be given by Pinnacol. But the language of the provision and its physical location on the certificate strongly suggest that Pinnacol or the agent that issued the certificate was required to give notice to Alliance of any termination of the policy.

¶ 36 Pinnacol, however, asks us to construe the cancellation provision to provide that the notice that Pinnacol undertakes to give is only notice to the policy holder, MDR, not the certificate holder. For the following reasons, we decline to do so.

¶ 37 A court must interpret a writing in its entirety, harmonizing and giving effect to all provisions so that none will be rendered meaningless. *Copper Mountain, Inc. v. Indus. Sys., Inc.* 208 P.3d 692, 697 (Colo.2009). In our view, Pinnacol's proffered interpretation does not give reasonable meaning to the words of the provision or the physical composition of the certificate, especially because Pinnacol was already required, by the terms of the policy, to give notice of termination to MDR.

¶ 38 Further, even if, as Judge Casebolt would hold in his dissenting opinion, the notice provision were ambiguous, the legal result would be the same. Under long-established principles, any "ambiguity in the policy language [of an insurance contract] is construed against the drafter and in favor of the insured." *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1060 (Colo.2005); *see*

also *Auto–Owner's Ins. Co.,* 219 P.3d at 377. Because the certificate at issue here plays the same role as an insurance contract—to protect the holder against liability—to the extent that there is any ambiguity in the cancellation provision, we conclude that the provision required that notice of cancellation be given to Alliance, the holder of the certificate.[6]

¶ 39 Further, courts may not enforce provisions of contracts that are contrary to public policy. *F.D.I.C. v. Am. Cas. Co.,* 843 P.2d 1285, 1290 (Colo.1992). "A contractual provision is void if the interest in enforcing the provision is clearly outweighed by a contrary public policy." *Huizar v. Allstate Ins. Co.,* 952 P.2d 342, 344 (Colo.1998) (quoting *Am. Cas. Co.,* 843 P.2d at 1290). This principle extends to "conditions and terms of an insurance contract that undermine legislatively-expressed public policy." *Id.*

¶ 40 The General Assembly has specifically recognized the role that certificates of insurance play in the workers' compensation scheme. The Act expressly contemplates that a person or entity in the chain of contract or work on a construction contract may obtain a certificate of workers' compensation insurance to protect itself from the types of liabilities at issue here. Section 8–41–404(5)(c) provides that a certificate of insurance constitutes proof that a complying workers' compensation policy is in effect, and section 8–41–402(2) immunizes an owner from liability to an injured employee when a contractor or subcontractor has complying workers' compensation insurance. Thus, by legislative mandate, certificates of insurance play a critical role in the workers' compensation system—a critical role that would be wholly undermined if, as Pinnacol argues,

---

6. In addition, to the extent there is any ambiguity in the language used, courts may look to the conduct of the parties in construing an ambiguous writing. *See* Restatement (Second) of Contracts § 220(1) (1981) ("An agreement is interpreted in accordance with a relevant usage if each party knew or had reason to know of the usage and neither party knew or had reason to know that the meaning attached by the other was inconsistent with the usage."); *see also id.* at § 219 ("Usage is habitual or customary practice."). In this respect, we observe that the rec-

ord discloses that when Pinnacol directly issues a certificate of insurance (as opposed to when a certificate is issued by Pinnacol's agent), it gives notice to the certificate holder as a matter of course. Because it is undisputed that Bradley acted as Pinnacol's agent in issuing the certificate, *see supra* note 5, it is legally immaterial that the certificate in this case was issued by Bradley and not directly by Pinnacol. Thus Pinnacol's own course of conduct fully supports a determination that the certificate required notice to Alliance.

either (1) notices of termination need not be provided to certificate holders or (2) various disclaimers and exculpatory language like that found in the certificate[7] could immunize insurers from any liability arising from the issuance of the certificate.

¶ 41 Colorado's public policy, as described in the Act, requires that courts give effect to the reasonable meaning and purpose of certificates of insurance. To give effect to the role that the General Assembly contemplated certificates of insurance would play in the workers' compensation system, we must (1) construe the certificate as requiring notice to the certificate holder of termination of coverage, and (2) disregard any language and disclaimers that would impede the certificate from fulfilling its statutorily-prescribed purpose.[8]

¶ 42 Pinnacol argues otherwise, relying on *Broderick Investment Co. v. Strand Nordstrom Stailey Parker, Inc.*, 794 P.2d 264, 266 (Colo.App.1990), in which a division of this court held generally that a certificate of insurance is subject to the terms of the underlying policy, does not constitute a binder or contract of insurance, and does not create a duty to inform a certificate holder of changes in circumstances. Pinnacol's reliance upon *Broderick*, however, is misplaced. Although the disclaimers and exculpatory language in the certificate of insurance at issue in *Broderick* were similar to that of the certificate in this case, *Broderick* did not involve a certificate of insurance issued under the Act. As we explained above, certificates of insurance play an important role in the statutory scheme established by the Act: the Act specifically recognizes certificates of insurance as a mechanism to protect an owner from precisely the types of liabilities imposed on Hoff in this case. *See* §§ 8–41–402, 8–41–404(5)(c). Because *Broderick* was not a

workers' compensation case, the division had no occasion to address the special role that certificates of insurance play in the workers' compensation area.

¶ 43 For the forgoing reasons, we conclude that Alliance (and thus Hoff indirectly) was entitled to rely on the substance of the certificate, free of the disclaimers and exculpatory language. Thus, Pinnacol was required to notify Alliance of the cancellation of MDR's policy. It is undisputed that neither Pinnacol nor its agent, Bradley, did so.

### D. Remaining Factual Issues

¶ 44 We do agree, however, that the fact finder must resolve all remaining factual issues relating to Hoff's promissory estoppel claim—specifically, whether Alliance or Hoff relied upon the promises contained in the certificate, as we have construed them. In this respect, we disagree with Judge Berger that we may decide that issue as a matter of law. To the contrary, there is more than one reasonable inference that may be drawn from the facts, and in such circumstances, it is for the fact finder, not an appellate court, to determine what, if any, inferences should be drawn from the evidence presented.

### IV. Conclusion

¶ 45 The order is set aside in part, and the case is remanded to the Panel for remand to the ALJ to resolve all remaining factual issues relating to Hoff's promissory estoppel claim–specifically, whether (1) Alliance or Hoff relied upon the promises contained in the certificate, as we have construed them in this opinion; and (2) whether circumstances exist such that injustice can be avoided only by enforcement of the promises contained in the certificate. In his discretion, the ALJ

---

7. The certificate provides that it "is issued as a matter of information only and confers no rights upon the certificate holder" and "does not constitute a contract between the issuing insurer's authorized representative ... and the certificate holder."

8. For example, at oral argument, counsel for Pinnacol acknowledged that if this court were to give effect to the disclaimers contained in the certificate, the insurance coverage noted in the

certificate could dissipate one minute after its issuance without any notice to the certificate holder. Thus, as construed by Pinnacol, the certificate is a meaningless document, which undermines both the express requirements and purposes of the Act. *See* §§ 8–41–402(2), 8–41–404(1)(a), (5)(c), C.R.S.2014. This court, and the ALJ and Panel on remand, are prohibited by law from acquiescing in such an interpretation of the certificate.

may conduct an additional hearing and allow submission of additional evidence.

JUDGE CASEBOLT concurs in part and dissents in part.

JUDGE BERGER concurs in part and dissents in part.

JUDGE CASEBOLT concurring in part and dissenting in part.

¶ 46 I fully concur that petitioner, Norma Patricia Hoff, has standing to challenge the ALJ's order and the Panel's conclusion that MDR was not covered by the insurance policy issued by Pinnacol to MDR. Therefore, I join in part II of the majority opinion. I also agree that the Panel misconstrued the law of promissory estoppel and that the case must be remanded to the ALJ to address whether a promise made by Pinnacol and Bradley induced action or forbearance and whether injustice can be avoided only by enforcement of the promise. Hence, I also join in subsections A, B, and D of part III of the majority opinion. However, I do not agree that the certificate, as a matter of law, promised that Pinnacol and Bradley would give notice to Alliance of any cancellation of coverage; nor do I agree that the disclaimers and exculpatory language in the certificate are invalid as a matter of law. Instead, I conclude that the promise in the certificate is ambiguous and I would therefore remand that issue to the ALJ for further consideration. Accordingly, I respectfully dissent from subsection C of part III of the majority opinion.

### A. Issue of Fact or Law?

¶ 47 As the majority correctly notes, whether the elements of promissory estoppel have been proved generally presents a question of fact for the fact finder to resolve, *see Alexander v. McClellan*, 56 P.3d 102, 106 (Colo.App.2002), and where more than one inference could be drawn from evidence adduced at a hearing, the issue must be determined by the trier of fact and cannot be determined as a matter of law. *Reynolds v. Farber*, 40 Colo.App. 467, 471, 577 P.2d 318, 320 (1978).

### B. Who Determines the Meaning of a Written Agreement?

¶ 48 The legal meaning of a written agreement generally presents a question of law for a court to decide. *Colo. Div. of Ins. v. AutoOwner's Ins. Co.*, 219 P.3d 371, 376 (Colo.App.2009). However, when a written document contains a promise that is central to the dispute and the promise is ambiguous, the fact finder must determine the meaning of the promise in the same manner as other questions of fact. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo.1996); *Preserve at the Fort, Ltd. v. Prudential Huntoon Paige Assocs.*, 129 P.3d 1015, 1017–18 (Colo. App.2004).

### C. When Is a Document Ambiguous and What May Be Considered?

¶ 49 Whether a contract or document is ambiguous presents a question of law for the court. *See Nat'l Cas. Co. v. Great Sw. Fire Ins. Co.*, 833 P.2d 741, 744–47 (Colo.1992). The provisions of a document are ambiguous when they are susceptible to more than one reasonable interpretation. *See Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo.1994).

¶ 50 When a document is ambiguous, a fact finder may consider the statements or conduct of the parties before any dispute arose between them, the language of the document, the negotiations, if any, surrounding its creation, and any reasonable expectations the parties may have had. *See Fire Ins. Exch. v. Rael*, 895 P.2d 1139, 1142–44 (Colo.App. 1995); *see also* Restatement (Second) of Contracts § 220 (1981) ("An agreement is interpreted in accordance with a relevant usage if each party knew or had reason to know of the usage and neither party knew or had reason to know that the meaning attached by the other was inconsistent with the usage."); *id.* at § 219 ("Usage is habitual or customary practice.").

### D. Application of These Principles

¶ 51 I conclude that the certificate is ambiguous and that the kind and nature of the promises and disclaimers contained in the certificate present factual issues that the ALJ should first decide.

¶ 52 The certificate, which is dated October 20, 2010, identifies Alliance as the certificate holder and promises that a workers' compensation policy was in force as of that date, insuring MDR, with effective dates of July 9, 2010, to July 1, 2011. Concerning cancellation, the certificate promises that, "Should any of the above described policies be cancelled before the expiration date thereof, notice will be delivered in accordance with the policy provisions." This language is immediately adjacent to the designation of Alliance as the certificate holder.

¶ 53 But what does that promise mean? It does not specify that notice will be given to the certificate holder. One possible interpretation, adopted by the majority, is that the language of this provision and its physical location on the certificate required Pinnacol or Bradley to give notice to Alliance of any cancellation of the policy. And there are inferences that may be gleaned from the record to support this view. `

¶ 54 For example, Pinnacol's underwriter testified at the hearing that the purpose of a certificate of insurance is to ensure that insurance coverage is in effect. She stated that both Pinnacol and Bradley, its agent, typically supply certificates of insurance upon request of the insured.

¶ 55 The underwriter testified that Bradley issued three different certificates to Alliance concerning workers' compensation coverage for MDR: one dated October 20, 2010 (showing coverage from July 9, 2010, to July 1, 2011); one dated March 11, 2011 (showing the same coverage dates); and one dated June 9, 2011 (stating that there was coverage from July 9, 2010, to March 11, 2011). From this, a fact finder could infer that Bradley sent a certificate to Alliance every time some type of coverage event occurred, but did not advise Alliance of the pending cancellation, thus breaching a promise made to Alliance.

¶ 56 Further, the underwriter testified that when an insured requests Pinnacol, itself, to issue a certificate, and it does so, Pinnacol affirmatively undertakes to notify a certificate holder when a cancellation of the insurance policy is upcoming. She explained that a certificate holder can receive either ten or thirty days' notice when the policy is pending cancellation. But no explanation was given for why Bradley, Pinnacol's acknowledged agent, did not provide such notice here, even though the underwriter acknowledged that Bradley had the authority to issue certificates on Pinnacol's behalf.

¶ 57 At the same time, however, the certificate does not affirmatively promise that notice will go to Alliance in the event of cancellation. Instead, it states that notice "will be given in accordance with the policy provisions." There is no dispute here that MDR's workers' compensation policy provides only for notice to be given to the named insured, not to any certificate holder. Accordingly, a fact finder could infer that a certificate holder has no rights. .

¶ 58 This inference is buttressed by the certificate's disclaimer. It cautions:

> This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not affirmatively or negatively amend, extend, or alter the coverage afforded by the policies below. . This certificate of insurance does not constitute a contract between the issuing insurer(s), authorized representative, or producer and the certificate holder.

¶ 59 Relying on these disclaimers, Pinnacol's counsel asserted during oral argument before us that the document certifies the existence of workers' compensation coverage only for the brief instance or transitory moment in time when the certificate itself is generated and sent to the holder; hence, he argued that the holder cannot rely on the certificate or the existence of coverage. But that assertion could fly in the face of the General Assembly's stated purpose in providing for the use of certificates of insurance.

¶ 60 Pertinent portions of section 8–41–404, C.R.S.2014, provide:

> (1)(a) . . . [E]very person performing construction work on a construction site shall be covered by workers' compensation insurance, and a person who contracts for the performance of construction work on a construction site shall either provide . . . workers' compensation coverage for, or require proof of workers' compensation cov-

erage from, every person with whom he or she has a direct contract . . .

. . . .

(5) As used in this section:

. . . .

(c) "Proof of workers' compensation coverage" includes a certificate or other written confirmation, issued by the insurer or authorized agent of the insurer, of the existence of workers' compensation coverage in force during the period of the performance of construction work on the construction site.

¶ 61 Hence, a person who contracts for the performance of construction work must have workers' compensation insurance or obtain a certificate that demonstrates the existence of coverage "during the period of the performance of construction work." Accordingly, when Alliance obtained the certificate from Bradley, it can be inferred that it was attempting to comply with the statutory requirement to secure proof of workers' compensation coverage for MDR that was supposed to be in force while claimant was working on the Hoffs' roof.

¶ 62 Thus, in light of the statutory language and absent more, the existence of the certificate here could lead to the conclusion that, on March 10, 2011, MDR had coverage in force. Indeed, the third certificate issued by Bradley to Alliance states that coverage existed to March 11, 2011, one day *after* the claimant was injured.

¶ 63 The majority reads the certificate to have a definite meaning and term, requiring Pinnacol or Bradley to give notice of cancellation to Alliance. But, I am not convinced that it is appropriate for this court to reach that conclusion instead of allowing the ALJ, as fact finder, to make that determination, especially because there are conflicting inferences under the circumstances described. *See Rael*, 895 P.2d at 1142–44 (when a document is ambiguous, a fact finder may consider the statements or conduct of the parties before any dispute arose between them, the language of the document, the negotiations, if any, surrounding its creation, and any reasonable expectations the parties may have had); *see also Dorman*, 914 P.2d at 912

(when there is ambiguity in a written document, the fact finder must determine its meaning in the same manner as other questions of fact).

¶ 64 The majority concludes that, even if the notice provision is ambiguous, it must be construed against Pinnacol and Bradley and in favor of the insured. But MDR is the insured in this instance, not Hoff; hence, I do not view the legal principle as applicable in this instance. Furthermore, the certificate itself expressly states that it "does not constitute a contract between the issuing insurer(s), authorized representative, or producer and the certificate holder," and there is no indication that consideration was given by Alliance in return for any promise the certificate makes.

¶ 65 In addition, section 8–41–404(5)(c), does not contain any definition of a certificate of insurance, nor does it mandate that notice by the insurer must be given to a certificate holder. Instead, it simply states that a person who contracts for the performance of construction work on a construction site (here, Hoff and Alliance) shall require proof of workers' compensation insurance, which proof may consist of a certificate or other written confirmation issued by the insurer or authorized agent of the insurer, of the existence of workers' compensation coverage in force during the period of the performance of the work. I cannot construe this statute to require something it clearly does not. *See Colo. Dep't of Revenue v. Hibbs*, 122 P.3d 999, 1004 (Colo.2005) (courts do not add words to a statute or subtract words from it); *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.*, 3 P.3d 30, 35 (Colo.2000) (courts will not read into a statute an exception or proviso that the plain language does not suggest). And for similar reasons, I cannot agree with the majority that the disclaimers are void as a matter of law as against public policy. The statute does not impose a duty to give notice of cancellation, or otherwise mandate that outcome.

¶ 66 Hence, given the conflicting inferences that can be drawn from the evidence, and the complicating factor of the language in section 8–41–404(5)(c), I perceive that the promise is ambiguous under these circumstances. In

light of the ambiguity of the certificate, I conclude that factual determinations must be made concerning the first prong of Hoff's promissory estoppel claim. Accordingly, I would remand the entire promissory estoppel issue to the ALJ.

¶ 67 I therefore concur in part and respectfully dissent in part.

JUDGE BERGER concurring in part and dissenting in part.

¶ 68 In my view, Pinnacol is estopped, as a matter of law, from denying coverage for the injured claimant's benefits. The facts that are material to this determination are undisputed. Applying the law to these undisputed facts leads inexorably to this conclusion. Thus, while I agree completely with the majority's determination that Hoff has standing, and that, as a matter of law, Pinnacol had a legal duty to give notice of cancellation to Alliance, I disagree that a remand is necessary.

### I. Promissory Estoppel

¶ 69 Hoff has pleaded a claim of promissory estoppel. The elements of promissory estoppel are: (1) a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee or a third person; (2) action or forbearance induced by that promise; and (3) the existence of circumstances such that injustice can be avoided only by enforcement of the promise. *Nelson v. Elway,* 908 P.2d 102, 110 (Colo. 1995); *Galie v. RAM Assocs. Mgmt. Servs., Inc.,* 757 P.2d 176, 178 (Colo.App.1988). I believe that we can, and should, determine, as a matter of law, that the Panel was incorrect in concluding that these elements are not met here.

### A. The Promise

¶ 70 The majority has properly held that the cancellation provision of the certificate required Pinnacol or its agent to give notice of policy cancellation to Alliance. This is the promise that establishes, as a matter of law, the first element of a claim for promissory estoppel. And, the majority has corrected the Panel's erroneous view that the promise must have been made directly to Hoff; as the majority explains, the law is otherwise.

### B. Action or Forbearance Induced by the Promise

¶ 71 The record establishes without contradiction that Alliance affirmatively sought evidence that MDR had workers' compensation insurance and, in fact, obtained the certificate. Based on the uncontradicted evidence that Alliance ceased working with MDR immediately after belatedly learning of the policy cancellation, the only reasonable inference that can be drawn is that Alliance would have taken steps protecting it, and hence Hoff, from liability if Pinnacol had met its legal obligation to provide notice of cancellation to Alliance.

¶ 72 Alliance was required by law either to obtain its own workers' compensation insurance or obtain proof (such as a certificate of insurance) that another party in the chain of the construction work had such insurance. *See* § 8–41–404(1)(a), (5)(c), C.R.S.2014. People are presumed to obey the law absent evidence to the contrary. No contrary evidence exists in this record; moreover, given that Alliance initially obtained the certificate in order to comply with its obligations under section 8–41–404(1)(a), it is reasonable to infer that Alliance would have taken additional actions to remain in compliance had it learned that MDR no longer possessed the legally required coverage. Any contrary finding by the ALJ would be without record support and clearly erroneous.

¶ 73 Additionally, the undisputed facts permit no factual determination other than that Hoff relied on Alliance's statement that it had liability coverage—an assurance which was based on Alliance's belief that MDR was adequately insured, which, in turn, was based on the certificate from Pinnacol. Consequently, Hoff took no further steps to protect herself from the type of liability at issue here, thus demonstrating a forbearance indirectly induced by the certificate's promise that MDR had workers' compensation insur-

ance.[1] Accordingly, Hoff has established, as a matter of law, the second element of a promissory estoppel claim.

¶ 74 I therefore disagree with the majority that it is not appropriate for us to make this determination. "If facts are undisputed and reasonable minds could draw but one inference from them, [the determination of an ultimate fact] is a question of law for [an appellate] court." *Schrieber v. Brown & Root, Inc.,* 888 P.2d 274, 277 (Colo.App.1993). This principle is fully applicable to workers' compensation cases. *See id.; see also Dorsch v. Indus. Comm'n,* 185 Colo. 219, 221–22, 523 P.2d 458, 459 (1974); *Indus. Comm'n v. Havens,* 136 Colo. 111, 117, 314 P.2d 698, 701 (1957).

### C.  Injustice Can Be Avoided Only by Enforcement of the Promise

¶ 75 The third element of a claim for promissory estoppel is also met as a matter of law. In the absence of a viable claim for promissory estoppel, the result in this case is stark and fundamentally unjust: Hoff is indebted to the injured worker for an amount in excess of $300,000 and Pinnacol, which issued the insurance policy and promised to notify Alliance of any cancellation of the policy, has no liability at all. This is an injustice which can be avoided only by sustaining Hoff's claim of promissory estoppel.[2]

### II.  Conclusion

¶ 76 I therefore agree with the majority that we must set aside the Panel's order insofar as it determined that Pinnacol was not liable for medical and disability benefits to claimant, and that Hoff was liable for those benefits. However, I disagree that a remand is necessary to redetermine liability. Rather, this court should hold, as a matter of law, that Pinnacol is estopped from denying benefits to claimant. Because Pinnacol is estopped from denying benefits to claimant, there was a complying workers' compensation policy in effect, and Hoff, therefore, is not liable, also as a matter of law, for the claimant's benefits. *See* § 8–41–402(2), C.R.S.2014 (immunizing owner from liability to a contractor or its employees if a complying workers' compensation insurance policy is in effect); *Wagner v. Coors Energy Co.,* 685 P.2d 1380, 1382 (Colo.App.1984); *see also Krol v. CF & I Steel,* 2013 COA 32, ¶ 13, 307 P.3d 1116.

¶ 77 I therefore concur in part and respectfully dissent in part.

---

1.  An analogous situation arises in the context of the law of fraudulent misrepresentation. The maker of a fraudulent misrepresentation may be subject to liability to a third person who acts in justifiable reliance upon the misrepresentation if the maker has reason to expect that its terms will be repeated or its substance communicated to the third person and that it will influence his or her conduct in the transaction or type of transaction involved. Restatement (Second) Torts § 533 (1977). In such a context, the relevant inquiry is not whether the third person's actions would have been different if the misrepresentation had not been made, but whether they *might* have been different. *See Morrison v. Goodspeed,* 100 Colo. 470, 479, 68 P.2d 458, 463 (1937). Similarly, here, the certificate was the basis for Alliance's representation to Hoff that Alliance had coverage, and Hoff's actions might have been different had the certificate never been issued to Alliance, and consequently Alliance had not made such an assurance to Hoff.

2.  Section 8–41–404(1)(a) provides that "a person who contracts for the performance of construction work on a construction site shall either provide … workers' compensation coverage for, or require proof of workers' compensation coverage from, every person with whom he or she has a direct contract to perform construction work on the construction site." A violation of this section is punishable by an administrative fine of not more than $250 per day. §§ 8–41–404(3), 8–43–409(1)(b), C.R.S.2014. However, the fact that Hoff may be liable for noncompliance with this requirement is not relevant to my determination that Pinnacol is estopped from denying benefits for claimant's injuries. In fact, that Hoff may be subject to a minimal administrative fine supports my conclusion that the General Assembly did not intend to impose on Hoff the immense amount of liability she is subject to under the Panel's order.