2012 COA 124

**Kathleen KIECKHAFER, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado; Department of Human Services–Southern District; and Pinnacol Assurance, Respondents.**

**No. 11CA1801.**

Colorado Court of Appeals, Div. V.

July 19, 2012.

Hassler Law Firm, LLC, Lawrence D. Saunders, Pueblo, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

Ritsema & Lyon, P.C., Kelly F. Kruegel, Denver, Colorado, for Respondents Department of Human Services–Southern District and Pinnacol Assurance.

Opinion by Judge LOEB.

· ¶ 1 In this workers' compensation action, claimant, Kathleen Kieckhafer, appeals the final order of the Industrial Claim Appeals Office (Panel) affirming the order of the administrative law judge (ALJ) denying and dismissing her claim for benefits. The ALJ determined that because claimant had not introduced the testimony or reports of a medical expert demonstrating that she suffered a recognized disability from a psychologically traumatic event, she had failed to meet her burden of establishing compensability under section 8–41–301(2)(a), C.R.S.2011. We conclude that the ALJ and the Panel applied the proper standard and therefore affirm.

## I.  Background

¶ 2 Claimant worked as a nurse in the women's forensics unit of employer, the Colorado Mental Health Institute—Pueblo. Claimant became frustrated with aspects of her job and began experiencing work-related emotional distress. She sought psychological help for her distress and eventually filed a claim for workers' compensation benefits for her "mental/emotional distress."

¶ 3 After conducting a hearing, the ALJ determined that claimant had failed to introduce necessary evidence from a mental health professional—a physician or a psychologist—establishing that "claimant suffered a recognized disability arising from a psychologically traumatic event." Because such evidence is necessary to establish a claim for mental distress arising out of a nonphysical or purely mental event or injury, the ALJ found that claimant had not met her burden of demonstrating entitlement to benefits for her "mental-mental" claim. The ALJ therefore denied and dismissed the claim. The Panel affirmed, and this appeal followed.

## II.  Analysis

¶ 4 Claimant contends that the ALJ misapplied the law. She argues that the Panel's and the ALJ's interpretation of the governing statute, section 8–41–301(2)(a), imposes an insurmountable obstacle to claimants seeking medical benefits for their emotional injuries. She reasons that under the Panel's and the ALJ's interpretation, no claim for a mental injury would be compensable—that is, no claimant could obtain medical benefits to treat the mental injury—until a physician or psychologist had made a determination that the condition was permanent, which can only be assessed when a claimant has attained maximum medical improvement (MMI). Consequently, she argues that the Panel and the ALJ should not have held her to the higher burden of proof set forth in section 8–41–301(2)(a). We are not persuaded.

¶ 5 Section 8–41–301(2)(a) governs "mental-mental" claims and provides:

A claim of mental impairment must be proven by evidence supported by the testimony of a licensed physician or psychologist. For purposes of this subsection (2), "mental impairment" means a recognized, permanent disability arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury and consists of a psychologically traumatic event that is generally outside of a worker's usu-

al experience and would evoke significant symptoms of distress in a worker in similar circumstances. A mental impairment shall not be considered to arise out of and in the course of employment if it results from a disciplinary action, work evaluation, job transfer, lay-off, demotion, promotion, termination, retirement, or similar action taken in good faith by the employer. The mental impairment that is the basis of the claim shall have arisen primarily from the claimant's then occupation and place of employment in order to be compensable.

¶ 6 Claimant maintains that the legislature's inclusion of the words "permanent disability" in the definition of "mental impairment" places too high a burden on claimants seeking care for their work-related mental injuries. She argues that this definition renders such claims compensable only *after* a claimant has completed treatment or, at least, obtained treatment from his or her own personal physician at his or her own expense. She reasons that treatment must be undertaken with a claimant's personal physician or psychologist because, until such a health care professional has opined that a claimant's mental injury is a "permanent disability," no compensation can be sought under the statute. This conundrum, she argues, creates an unfair barrier to "mental-mental" claimants seeking covered care for their injuries.

## A. Rules of Statutory Construction

¶ 7 When interpreting a statute, we must give effect to the legislative intent and "construe all terms of a statute harmoniously, avoiding a strained or forced construction of any of its terms." *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1036 (Colo. 2004); *see also Anderson v. Longmont Toyota, Inc.*, 102 P.3d 323, 326 (Colo.2004) (our duty is "to effectuate the intent and purpose of the General Assembly"). Hence, we apply "the plain and ordinary meaning of the statute, if clear." *Anderson*, 102 P.3d at 326; *see also Indus. Claim Appeals Office v. Orth*, 965 P.2d 1246, 1252 (Colo.1998).

¶ 8 While we are not bound by the Panel's interpretation or its earlier decisions, *Olivas–Soto v. Indus. Claim Appeals Office*, 143 P.3d 1178, 1180 (Colo.App.2006), and review statutory construction de novo, *Ray v. Indus. Claim Appeals Office*, 124 P.3d 891, 893 (Colo.App.2005), *aff'd*, 145 P.3d 661 (Colo.2006), we give deference to the Panel's reasonable interpretations of the statute it administers. *Sanco Indus. v. Stefanski*, 147 P.3d 5, 8 (Colo.2006); *Dillard v. Indus. Claim Appeals Office*, 121 P.3d 301, 304 (Colo.App.2005), *aff'd*, 134 P.3d 407 (Colo. 2006). The Panel's interpretation will therefore be set aside only "if it is inconsistent with the clear language of the statute or with the legislative intent." *Support, Inc. v. Indus. Claim Appeals Office*, 968 P.2d 174, 175 (Colo.App.1998).

## B. Establishing "Mental–Mental" Claims

¶ 9 To receive benefits, an injured worker bears the threshold burden of establishing, by a preponderance of the evidence, that he or she has sustained a compensable injury proximately caused by his or her employment. § 8–41–301(1)(c), C.R.S.2011; *Faulkner v. Indus. Claim Appeals Office*, 12 P.3d 844, 846 (Colo.App.2000) ("Proof of causation is a threshold requirement which an injured employee must establish by a preponderance of the evidence before any compensation is awarded.").

¶ 10 The parties agree that claimant's injury falls within the scope of "mental-mental" injuries, in which "mental impairment follows solely an emotional stimulus." *Oberle v. Indus. Claim Appeals Office*, 919 P.2d 918, 920 (Colo.App.1996). An injury that is "the product of purely an emotional stimulus that results in mental impairment," *id.* at 921, requires a "heightened standard of proof" to "help prevent frivolous or improper claims." *Davison*, 84 P.3d at 1029.[1] Under the express terms of the statute, "the testimony of a licensed physician or psychologist" is re-

---

1. We note that, in 1999, the General Assembly added section 8–41–301(2)(a.5), C.R.S.2011, which extended the heightened standard of proof for claims of mental impairment to such claims "arising from an accidental physical injury that leads to a recognized permanent psychological disability." This is the same standard that applies to pure "mental-mental" claims, as is the case here.

quired to establish a claim for mental impairment. § 8–41–301(2)(a); *Oberle*, 919 P.2d at 921. The Colorado Supreme Court has interpreted this phrase broadly to include "the work product of a licensed physician or psychologist," which "may include letters, reports, affidavits, depositions, documents, and/or oral testimony." *Colo. Dep't of Labor & Emp't v. Esser*, 30 P.3d 189, 196 (Colo. 2001).

¶ 11 However, not all components of such a claim must be proven by expert testimony. Rather, "[e]xpert testimony is necessary to prove that the event was psychologically traumatic, but the other elements can be proved by lay and/or expert evidence." *Davison*, 84 P.3d at 1033; *see also City of Loveland Police Dep't v. Indus. Claim Appeals Office*, 141 P.3d 943, 951 (Colo.App.2006) ("[E]xpert testimony is necessary only to prove that an event was psychologically traumatic and . . . the other elements of [section] 8–41–301(2)(a) can be proved by lay testimony, expert testimony, or a combination thereof."). In addition, an expert need not use the precise statutory language to opine on a claimant's condition. "What is required is the presentation of sufficient facts such that the ALJ can find there existed a psychologically traumatic event or events." *City of Loveland*, 141 P.3d at 951.

¶ 12 Whether a claimant has met his or her burden of establishing a compensable mental impairment is a question of fact for determination by the ALJ. *See Pub. Serv. v. Indus. Claim Appeals Office*, 68 P.3d 583, 585 (Colo.App.2003) ("The causes of a claimant's mental impairment and the commonality of those causes are questions of fact to be resolved by the ALJ."). We must uphold the ALJ's factual findings if they are supported by substantial evidence in the record. § 8–43–308, C.R.S.2011; *Kroupa v. Indus. Claim Appeals Office*, 53 P.3d 1192, 1197 (Colo.App. 2002).

C. Analysis of Claimant's Contention

¶ 13 Here, the ALJ determined that claimant had not met her statutory burden to establish a "mental-mental" claim because she failed to introduce any evidence from a "licensed physician or psychologist" to support her claim. Claimant suggests that the evidence she presented from a licensed social worker and a physician's assistant should have been sufficient to establish compensability. She does not dispute that she did not introduce evidence prepared by a health care professional meeting the statutory requirements. Rather, she argues that requiring claimants to prove their injury through expert testimony and evidence in order to obtain medical benefits unduly burdens victims of "mental-mental" injuries.

¶ 14 In particular, claimant argues that the use of the word "permanent" in section 8–41–301(2)(a) necessitates a determination that a claimant has sustained a permanent disability before any benefits can be received, and thus requires "mental-mental" claimants to "pay for medical treatment out of their own pocket" to obtain the requisite medical evidence to prove their claims. She reasons that because the statute employs the word "permanent," a claimant must effectively reach MMI before any benefits can attach. But claimant's interpretation imbues "permanent" with a meaning not intended by the legislature. A "recognized, permanent disability," as addressed in section 8–41–301(2)(a), refers to a disabling, permanent mental condition. It is not equivalent to "permanent partial disability benefits," set forth in section 8–42–107(2) and (8), C.R.S. 2011. The latter phrase addresses a means of calculating benefits but does not define an injury, whereas the legislature's use of the phrase "recognized, permanent disability" seeks to limit recovery to those permanent mental impairments that have a disabling effect on the sufferer.

¶ 15 Claimant's argument essentially makes a distinction between "up-front" medical benefits a claimant seeks to treat her injuries, and more permanent benefits a claimant may seek or receive later in a claim's history progression for permanent partial or total disability benefits (PPD and PTD). However, the distinction claimant makes, between compensability of medical benefits and permanent benefits a claimant may receive once she has reached MMI, does not exist in the statute. The statute states

only that "a *claim* of mental impairment must be proven" with the introduction of evidence from a "licensed physician or psychologist." § 8–41–301(2)(a) (emphasis added). "Claim" is a term of art which is defined broadly as " 'the aggregate of operative facts which give rise to a right enforceable in the courts.' " *Dinosaur Park Invs., L.L.C. v. Tello,* 192 P.3d 513, 516 (Colo.App.2008) (quoting *Corporon v. Safeway Stores, Inc.,* 708 P.2d 1385, 1388 (Colo.App.1985)). "We presume the legislature is aware of existing case law precedent when it enacts or amends statutes." *People v. Laeke,* 2012 CO 13, ¶ 15, 271 P.3d 1111. Consequently, we must assume that the legislature intended to imbue the word "claim" with the definition adopted in *Corporon* when it used "claim" in section 8–41–301(2)(a).

¶ 16 To interpret the statute in the manner advocated by claimant would be to disregard the plain, ordinary meaning of the language used, and to incorporate into the statute distinctions not created by the legislature. Under claimant's proposed interpretation, a claimant seeking medical benefits for a mental impairment not caused by a physical injury would only have to meet a lesser burden of proof to receive benefits, or an employer would have to forgo litigating the merits of a claim until a claimant reached MMI, at which point the heightened burden of proof would be triggered. We find no statutory basis for the creation of this two-tiered approach and are not at liberty to read provisions, including the distinctions proposed by claimant, into the Workers' Compensation Act. *See Kraus v. Artcraft Sign Co.,* 710 P.2d 480, 482 (Colo.1985) ("We have uniformly held that a court should not read nonexistent provisions into the ... Act.").

¶ 17 The Panel's interpretation of section 8–41–301(2)(a) is reasonable and consistent with the clear language of the statute. *See Sanco Indus.,* 147 P.3d at 8. It recognizes that the statute does not support the distinction claimant seeks to incorporate. Because the Panel's interpretation is neither plainly erroneous nor inconsistent with the legislature's intent, we decline to set aside the Panel's order. *See Jiminez,* 51 P.3d at 1093; *Support, Inc.,* 968 P.2d at 175.

¶ 18 We reject claimant's contention that subsections (2)(b) and (d) of section 8–41–301 compel a different conclusion because those subsections are incompatible with the Panel's interpretation of subsection (2)(a). To the contrary, we perceive no such inconsistency. Subsection (2)(b) merely provides that, where a claimant establishes the threshold for compensability for a mental impairment claim under subsection (2)(a) and also seeks medical benefits, the claimant shall be limited to twelve weeks of such benefits, subject to certain exceptions not relevant here.

¶ 19 To the extent that claimant relies on subsection (2)(d), she made this argument for the first time (by her own admission) at oral argument and did not even cite to that subsection in her brief on appeal. Thus, we need not address claimant's argument based on subsection (2)(d). *See Bd. of Cty. Comm'rs v. City of Greenwood Village,* 30 P.3d 846, 849 (Colo.App.2001) (argument raised for the first time during oral argument will not be considered on appeal).

¶ 20 In any event, we discern no incompatibility between subsection (2)(d) and the Panel's interpretation of subsection (2)(a). Subsection (2)(d) merely provides that, in addition to satisfying the heightened burden for establishing compensability of a mental impairment claim under section (2)(a), a claimant must also show that the mental impairment itself is "sufficient [either] to render the employee temporarily or permanently disabled from pursuing the occupation from which the claim arose or to require medical or psychological treatment." Nothing in that language negates the requirement in subsection (2)(a) that, as a threshold for compensability, a claimant must prove a recognized, permanent psychological disability by evidence supported by a licensed physician or psychologist.

¶ 21 Nor are we persuaded to set aside the order on the basis that the result imposes an undue burden on claimants seeking benefits for "mental-mental" injuries. As we read the statute, the legislature intended claimants seeking these kinds of benefits to meet the higher burden of proof. The legislature juxtaposed "recognized, permanent disability" with the requirement that a claimant provide

"evidence supported by the testimony of a licensed physician or psychologist" to reduce the incidence of fraudulent claims. *See Davison*, 84 P.3d at 1029. As noted by the supreme court in *Davison*, the legislature adopted this heightened burden "in mental impairment claims in order to help prevent frivolous or improper claims." *Id.* Adhering to claimant's suggested interpretation would negate the General Assembly's intent by eliminating the requisite heightened burden for "mental-mental" claimants seeking medical benefits. Although claimant may find this heightened standard burdensome to establish her claim in this case, that result was anticipated and intended by the legislature. Accordingly, claimant's contention is more properly addressed to the General Assembly, not this court.

¶ 22 We therefore conclude that the Panel did not err when it affirmed the ALJ's order denying and dismissing claimant's claim for mental impairment.

¶ 23 The order is affirmed.

Judge HAWTHORNE and Judge MILLER concur.