*1217 JUSTICE HOOD
delivered the Opinion of the Court.
11 In this workers' compensation insurance case, we consider whether an insurer had a legal obligation to notify a non-insured holder of a certificate of insurance when the insurance policy evidenced by the certificate was cancelled. Based on the certificate at issue here and the relevant statute, we conclude that the insurer had no such obligation. We therefore reverse the court of appeals' judgment to the contrary.
I. Facts
12 Norma Hoff owns a house that she rents out through a property management agency. When the roof of the house sustained hail damage, Hoff and her husband contracted with Alliance Construction & Restoration, Inc. ("Alliance") to repair it. Without Hoffs knowledge, Alliance subcontracted the roofing job to MDR Roofing, Inc. ("MDR"). MDR employed Hernan Hernandez as a roofer.
183 While working on Hoff's roof, Hernandez fell from a ladder and suffered serious injuries. He sought medical and temporary total disability benefits for these work-related injuries, but MDR's insurer, Pinnacol Assurance ("Pinnacol"), denied the claim because MDR's insurance coverage had lapsed. Neither Hoff nor Alliance had workers' compensation insurance. Hernandez then brought an action under the Workers' Compensation Act ("WCA" or "the Act"), §§ 8-40-101 to 8-47-209, 8-55-101 to -105, C.R.S. (2015), seeking benefits against MDR, Alliance, Hoff, and Pinnacol.
._ T4 The facts relevant to this claim are best summarized chronologically.
115 In July 2010, MDR applied for workers' compensation insurance from Pinnacol through Pinnacol's agent, Bradley Insurance Agency ("Bradley"). Shortly thereafter, Pin-nacol issued a policy to MDR. **
T6 In October 2010, before starting the roofing job on Hoffs property, Alliance obtained from Bradley a certificate of insurance [1] which verified that MDR had a workers' compensation insurance policy in effect from July 9, 2010, to July 1, 2011.
1? On February 10, 2011, Pinnacol informed MDR by certified letter that MDR's insurance policy would be cancelled if Pinnsa-col did not receive payment of a past-due premium by March 2, 2011. Pinnacol also mailed a copy of this letter to Bradley. Alliance was not notified of the pending cancellation.
ﬁg MDR did not pay the past-due premium, and the policy was therefore cancelled effective March 8, 2011. Pinnacol sent letters to MDR and Bradley advising them of the cancellation, but it did not send a letter to Alliance.
T9 One week later, on March 10, 2011, Hernandez’s injuries occurred.
110 On March 11, 2011, MDR's owner went to Bradley's office and asked to reinstate the policy. Bradley personnel informed MDR's owner that the policy could be reinstated only if the owner paid the outstanding premium, paid a reinstatement fee, and signed a "no-loss" letter, which is a statement by an insured certifying that no injuries have occurred since the insured's policy was can-celled. MDR's owner made the necessary payments and, although he knew Hernandez had been injured since the policy's cancellation, signed and submitted the no-loss letter. He did not inform Bradley of Hernandez's accident. That same day, upon receiving the payments and no-loss letter, Pinnacol reinstated MDR's policy retroactively to the March 3 cancellation date.
111 On March 16, 2011, MDR's owner returned to Bradley's office to report Hernandez's March 10 injuries. Bradley contacted Pinnacol to advise it of the claim. Pinnacol contested the claim on coverage grounds and later cancelled the policy.
*1218 II. Procedural History -
12 After conducting a hearing on Hernandez's workers' compensation claim, an administrative law judge ("ALJ") determined that Pinngcol's March 3 cancellation of MDR's insurance policy was proper. The ALJ further determined, that MDR's owner's failure to disclose Hernandez's injuries when he signed the no-loss letter was a material misrepresentation that rendered void the March 11 reinstatement of the policy, As a result, MDR had no workers' compensation coverage on March 10-the day of Hernandez's injuries-and Pinnacol could not be held liable on the claim.
T13 The ALJ also concluded that, in addition to MDR, who was Hernandez's direct employer, Hoff and Alliance were Hernandez's statutory employers under sections 8-41-402 and 841-401 of the WCA, respectively. Finding that none of these three parties had a workers' compensation insurance policy in effect on March 10, 2011, the ALJ held them jointly liable for Hernandez's benefits.
14 On appeal to the Industrial Claim Appeals Office ("ICAO" or "the Panel"), Hoff argued that, under the doctrine of promissory estoppel, Pinnacol should be barred from denying coverage because the certificate of insurance required Pinnacol to notify Alliance that MDR's policy was being cancelled, she and Alliance relied on the certificate as proof that MDR had insurance, and Pinnacol failed .to notify Alliance of the policy's cancellation, The Panel rejected this argument and affirmed the ALJ's order.
15 Hoff then appealed the Panel's order to the court of appeals,[2] again asserting a claim of promissory estoppel. In Hoff v. Industrial Claim Appeals Office, 2014 COA 137M, -- P.3d --, a division of the court of appeals reversed, with each of the division's three judges writing separately. Although the division unanimously rejected the Panel's promissory estoppel analysis,[3] id. at ¶¶ 28-30; id. at ¶ 46 (Cagebolt, J,, concurring in part and dissenting in part); id, at T 69 (Berger, J., concurring in part and dissenting in part), it disagreed as to how the estoppel claim should be resolved.
T16 The majority (Judges Dailey and Berger) held that the certificate required Pinna-col to notify Alliance if MDR's insurance policy was cancelled and that any contrary disclaimer language [4] in the certificate was void; accordingly, this notice obligation satisfied the "promise" element of Hoff's promissory estoppel claim as a matter of law. See id. at ¶ 2, 31-43 (majority opinion); Id at ¶ 70 (Berger, J., concurring in part t and dissenting in part). Judge Casebolt dissented from this holding, instead finding that the certificate was ambiguous and that "the kind and nature of the promises and disclaimers contained in the certificate present[ed] factual issues that the ALJ should first decide" on remand. See id. at f 51 (Casebolt, J., concurring in part and dissenting in part).
117 The majority (Judges Dailey and Case-bolt) also held, however, that the question of whether the other elements of promissory estoppel were satisfied was a factual issue best resolved by the ALJ in the first instance and that remand was therefore necessary. Id, at ¶¶ 2, 44 (majority opinion); id. at ¶ 46 (Casebolt, J., concurring in part and dissenting in part). Judge Berger dissented from this holding. In his view, the facts relevant to all elements of Hoffs promissory estoppel claim were undisputed, and the court there *1219 fore should have resolved the claim as a matter of law. Id. at 1% 68-69 (Berger, J., concurring in part and dissenting in part). Applying the law to the facts, Judge Berger would have héld that Pinnacol was estopped from denying coverage for Hernandez's benefits. See id. at I1 69-76.
18 We granted Pinnacol's petltlon for cer-tiorari.[5]
III. Analysis
19 We begin our analysis by addressing the appropriate standard of review and rejecting Pinnacol's contention that we should defer to the ICAO's interpretation of the WCA. We then turn to Hoffs promissory estoppel claim and, after summarizing the applicable law, examine whether the court of appeals properly determined that the initial, promise element of Hoffs claim was estab— lished as a matter of law.
120 In doing so, we first consider the court of appeals' determination that the certificate of insurance promised that the insurer, Pin-nacol, would notify the certificate holder, Al-Hance, of policy cancellation. We conclude that the unambiguous language of the certificate contains no such promise.
121 Next, we consider the court of appeals' holding that public policy expressed in see-tions 8-41-402 and 841-404 of the WCA required it to construe the certificate as promising notice to Alliance. We conclude that nothing in the WCA supports imposing such a promise either. _
122 Pinnacol was therefore under no obligation to notify Alliance of policy cancellation. Because Pinnacol did not promise to provide such notice, Hoff's promissory estop-pel- claim fails for lack of a necessary element, Accordingly, we reverse the Judgment of the court of appeals. -
A. Standard of Review
(28 Pinnacol argues the court of appeals erred in not deferring to the ICAO's interpretation of the WCA. Because the ICAO has not rendered a decision addressing the precise issues before us here, we disagree that deference is owed,
124 Judicial review of the Panel's disposition of a workers' compensation claim is governed by the WCA. See Fulton v. King Soopers, 823 P.2d 709, 712-13 (Colo. 1992), Section 8-43-307 allows dissatisfied parties to appeal a Panel order to the court of appeals, see § 8-48-807(1), and several subsequent sections cireumseribe the nature and seope of that court's review, see §§ 8-43-308 to -310. Section 8-43-313, in turn, allows a still-dissatisfied party to seek review of the court of appeals' decision in this court. If we grant review, our inquiry is limited "to a summary review of questions of law." § 8-48-8183. In evaluating a Panel order under these provisions, appellate courts defer to the agency's factual findings but review its conclusions of law de novo. See City of Brighton v. Rodriguez, 2014 CO 7, ¶¶ 11-12, 318 P.3d 496, 501; Kieckhafer v. Indus. Claim Appeals Office, 2012 COA 124, ¶¶ 8, 12, 284 P.3d 202, 205-06.
T25 So, the presumptive standard of review is de novo for the questions of law central to this case-ie., the proper construction of the certificate, the insurance policy, and certain provisions of the WCA. See Specialty Rests. Corp. v. Nelson, 231 P.3d 393, 397 (Colo., *1220 2010) ("Statutory construction is a question of law...."); Meier v. Denver U.S. Nat'l Bank, 164 Colo. 25, 431 P.2d 1019, 1021 (1967) ("The construction of a written instrument [is] a question of law. . ..").
26 But, as Pinnacol points out, this typically unfettered review is sometimes restricted when it comes to interpreting provisions of the WCA. Although appellate courts ultimately are not bound by the Panel's legal interpretations, see Rodriguez, ¶ 12, 318 P.3d at 501, or by its earlier decisions, Kieckhafer, ¶ 8, 284 P.3d at 205, courts nonetheless traditionally give deference to the Panel's reasonable interpretations of WCA provisions, see Specialty Rests., 231 P.3d at 397; Kieckhafer, ¶ 8, 284 P.3d at 205.
127 Pinnacol seizes on this deference principle, claiming that the court of appeals' prior decision in Broderick Investment Co. v. Strand Nordstrom Stailey Parker, Inc., 794 P.2d 264, 266 (Colo. App. 1990), set forth a rule that certificates of insurance create no rights for a certificate holder and that, although Broderick did not involve workers' compensation, the ICAO has long applied this rule in the workers' compensation context. As support, Pinnacol cites four prior ICAO decisions, in addition to the Panel's decision here, and asserts these decisions "implicitly interpret the Act as not creating any contractual duty for the benefit of a certificate holder where, as here, the certificate is specifically limited to an informational document only which is subject to the terms of the policy." Accordingly, Pinnacol argues the ICAO has interpreted the WCA as not requiring notice to certificate holders, and the court of appeals erred in failing to accord deference to this interpretation.
128 None of these ICAO decisions, however, interpreted the statutory provisions on which the court of appeals relied in this case. The ICAO did not examine whether public policy underlying sections 8-41-402 and 8-41-404 of the WCA required insurers to notify certificate holders about policy cancellations and rendered void any disclaimers that would prevent certificates from serving their intended purpose under the Act.
129 In fact, three of the four prior decisions, as well as the decision below, merely applied Broderick as controlling precedent without tying that case or its purported rule to any WCA provision at all, See Hernandez v. MDR Roofing, Inc., W.C. No. 4-850-627-03, 2013 WL 858028, at *4 (Colo. ICAO Feb, 27, 2013); Lopez-Najera v. Black Roofing, Inc., W.C. No. 4-565-863, 2004 WL 2107582, at *3 (Colo. ICAO Sept. 13, 2004); Gomez v. Gonzales, W.C. Nos. 4-447-171 & 4-449-330, 2004 WL 348737, at *8 (Colo. ICAO Feb, 18, 2004); Wilson v. H & S Constr., W.C. No. 4-472-849, 2002 WL 2018806, at *3 (Colo. ICAO Aug. 30, 2002). And the other prior decision squared Broderick with a statutory provision extraneous to the court of appeals' analysis here. See Suttles v, Sherman, W.C. No. 4-308-510, 1997 WL 730627, at *4-6 (Colo. ICAO Oct. 31, 1997) (citing § 8-45-112, C.R.S. (1997)). It neither interpreted sections 8-41-402 and 8-41-404 nor considered what those provisions require of insurers vis-a-vis certificate holders. Id.
130 Thus, Pinnacol's argument suffers from the false premise that the ICAO has rendered an interpretation of the WCA provisions central to the case at hand. In other words, there is no interpretation to which we or the court of appeals could defer. We therefore apply traditional de novo review.
B. Promissory Estoppel Does Not Apply Because There Was No Promise
1831 We now turn to Hoffs claim that Pinnacol is estopped from denying coverage for Hernandez's workers' compensation benefits. In order to place the issues on which we granted certiorari in context, we first briefly summarize the law of promissory es-toppel,. We then consider whether there is a promise here, based on the certificate of insurance or the WCA. We conclude there is not.
1. Promissory Estoppel Generally
182 Promissory estoppel is a quasi-contractual cause of action that, under certain cireumstances, provides a remedy for a party who relied on a promise made by another party, even though the promise was not contained in an enforceable contract. See Wheat Ridge Urban Renewal Auth. v. Cor *1221 nerstone Grp. XXII, L.L.C., 176 P.3d 737, 741 (Colo. 2007). A claim for promissory es-toppel consists of four elements: (1) a promise; (2) that the promisor reasonably should have expected would induce action or forbearance by the promisee or a third party; (8) on which the promisee or third party reasonably and detrimentally relied; and (4) that must be enforeed in order to prevent injustice. See, e.g., Cherokee Metro. Dist. v. Simpson, 148 P.3d 142, 151 (Colo. 2006). Where these elements are present, a promise becomes binding and may be enforced through the normal remedies available under contract law. Bd. of Cty. Comm'rs v. Delozier, 917 P.2d 714, 716 (Colo. 1996).
183 Here, the court of appeals concluded that Hoff qualified as a third party beneficiary of the alleged promise made to Alliance and thus could bring a claim based on that alleged promise. Hoff, ¶¶ 2 & n. 1, 22-24. The court also concluded that, although Bradley issued the certificate, Bradley was acting as Pinnacol's agent when it did so and therefore was an entity legally indistinguishable from Pinnacol for purposes of analyzing Hoffs claim. See id. at M1 290 & n. 5, 38 n. 6. Pinnacol does not challenge these conclusions, and we accept them as true for purposes of this appeal.
184 In addition, the court of appeals majority declined to decide whether Hoff had established all the elements of a claim for promissory estoppel. Id. at T 2, 44. Rather, as to all but the promise element, the majority determined that factual issues remained and therefore remanded the case to the ALJ to address those issues in the first instance. See id. at T1 2 & nn. 2-8, 44. Pinnacol does not challenge this remand decision either. Instead, Pinnacol focuses only on the court's disposition of the promise element.
85 The question for us, then, is whether the court of appeals properly determined that the promise element of Hoffs claim was satisfied as a matter of law. We turn to that question now.
2. Application
186 Based on both the language of the certificate's cancellation provision and perceived public policy underlying certain provisions of the WCA, the majority below construed the certificate as promising that Pinnacol would notify Alliance if MDR's workers' compensation policy was cancelled. See id. at TT 2, 81-48. The majority also concluded that the same public policy considerations voided the certificate's disclaimers. See id. at 11 81, 89-48.
137 We disagree. Considering each of the majority's dual rationales in turn, we conclude that Pinnacol was under no obligation to notify Alliance of policy cancellation. We also find it unnecessary to address the validity of the certificate's disclaimers.[6] Even assuming that, despite the disclaimers, the certificate could have contained enforceable promises, we still would conclude that a promise to give notice of policy cancellation to Alliance was not one of them. It follows that, regardless of the disclaimers' validity, Hoff's promissory estoppel claim fails for lack of a promise.
a. Nothing in the Language of the Certificate Promised Notice to Alliance
188 The certificate's notice provision is unambiguous, and it did not promise notice to Alliance.
*1222 $89 In construing a document, we look to its terms and apply them as written unless they are ambiguous. See USI Props. E., Inc. v. Simpson, 938 P.2d 168, 178 (Colo. 1997). To determine whether an ambiguity exists, we ask whether the document's plain language "is reasonably susceptible on its face to more than one interpretation." See Allen v. Pacheco, 71 P.3d 375, 378 (Colo 2003). If the document is unambiguous, we will "neither rewrite [it] nor limit its effect by a strained construction." Id.
140 The certificate here lists MDR as the "insured" and Pinnacol as an "insurer affording coverage." See Appendix. Below this information, and within a box entitled "coverages," the certificate lists two types of insurance policies: "general liability" and «workers compensation and employers liability." Id. Several details, such as the policy number and dates of coverage, are included for each of the policies. Id, Further below still, and within a box entitled "certificate holder," the certificate lists Alliance, Id. Finally, in a separate, adjacent box entitled "cancellation," the certificate includes the statement central to this case: -
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION THERE:OF, NOTICE WILL BE DELIVERED - IN ACCORDANCE WITH THE POLICY PROVISIONS
Id.
141 We conclude this language is reasonably subject to only one interpretation and is therefore unambiguous. In its first clause, the provision refers to the cancellation of "ANY -OF THE ABOVE DESCRIBED POLICIES." This language clearly refers to the general liability and workers' compensation liability policies referenced within the "coverages" box on the certificate. In its second clause, the provision states that, if one of those policies is cancelled, "NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVL-SIONS." Beginning at the end, "the policy," when read together with the first clause, refers to whichever of the two above-referenced policies has been cancelled, and "provisions" refers to the provisions of that policy. $42 This leaves us with the word "notice." Again, we find no ambiguity. Aside from specifying that policy cancellation is the event for which notice will be given, the language of the cancellation provision leaves the word "notice" unqualified. Thus, while we agree with the majority's observation that "[the cancellation provision does not specify to whom notice of cancellation must be given by Pinnacol," Hoff, 1 35, we conclude that the parties consigned the entire question of notice, including to whom. it must be given, to the provisions of the policy being cancelled.
143 Unlike the. court of appeals, we do not believe that, "because Pinnacol was already required, by the terms of the policy, to give notice of termination to MDR," our construction fails to "give reasonable meaning to ... the certificate." See id. at I 37. This reasoning simply begs the question: to conclude that the certificate duplicates a notice obligation contained in the policy, one must nee-essarily assume that the certificate imposes a notice obligation that exists independent of the policy to begin with. We reject the premise. and thus reject the conclusion. Likewise, we discern no tacit meaning from the proximity of the box identifying Alliance as the certificate holder to the box containing the cancellation provision.
44 Looking to the two "above described" policies available, the one whose cancellation is at issue in this case. is MDR's workers' compensation policy. The relevant provisions of that policy, in turn, oblige Pinnacol to give notice of cancellation to MDR and stipulate that such notice must comply with certain timing and delivery specifications. Nothing in these provisions states that notice will be provided to anyone other than MDR.
45 Because the plain language of the certificate promises only that notice will be delivered in accordance with the provisions of MDR's insurance policy, and because the provisions of that policy contain no promise to give notice to certificate holders, we conclude that Pinnacol was under no contractual obligation to notify Alliance when it cancelled MDR's policy.
46 We next consider whether, as the court of appeals majority determined, the *1223 WCA requires us to impose such an obligation anyway.
b. Nothing in the WCA Requifes Insurers to Provide Notice of Policy-Cancellation to. Certificate Holders
T47 No provision or public policy contained in the WCA required Pinnacol to notify Alliance if MDR's insurance policy was cancelled.
148 Our primary task in construing a statute is to effectuate the intent and purpose of the legislature. See Pulsifer v. Pueblo Prof'l Contractors, Inc., 161 P.3d 656, 658 (Colo. 2007). "We determine legislative intent primarily from the plain language of the statute." Id. We also look to statutory language to determine whether public policy affects our construction of an insurance provision. See Bailey v. Lincoln Gen. Ins. Co,, 255 P.3d 1039, 1045 (Colo. 2011); see also Rocky Mountain Hosp. & Med. Serv. v. Mariani, 916 P.2d 519, 525 (Colo. 1996) ("Statutes by their nature are the most reasonable and common sources for defining public policy."). In interpreting the WCA, we construe its language "so as to give effect and meaning to all its parts." Pulsifer, 161 P.3d at 658. If the statutory language is clear, we apply it as written. See Specialty Rests, 231 P.3d at 397. We construe the legislature's failure to include particular language not as an oversight, but as a deliberate omission reﬂectmg legislative intent. See id.
49 Applying these principles here, we note first that no WCA provision expressly requires that an insurer provide notice to certificate holders when the underlying insurance policy is cancelled. The only WCA provision that addresses notice of cancellation-section 8-44-110-states that a carrier of workers' compensation insurance "shall notify any employer insured by the carrier . and any agent or representative of such employer, if applicable, by certified mail of any cancellation of such employer's insurance coverage." § 8-44-110. The provision does not mention certificates of insurance or certificate holders. Id.
150 The ALJ determined, the Panel agreed, and Hoff essentially concedes that the terms of section 8-44-110 required only that Pinnacol notify MDR and Bradley when it cancelled MDR's policy, and that Pinnacol did so. Hoff does mot contend that Alliance was an "employer insured by the carrier," and for good reason. Even if the term "employer" as used in section 8-44-110 included statutory employers like Alliance, neither applicable law nor the certificate rendered Alliance an "insured" .for purposes of that seetion: Alliance never contracted with Pinnacol for insurance coverage, and neither Hoff nor the court of appeals goes so far as to assert that | "the certificate itself amounted to an insurance policy or contract of insurance. Cf. Certificate of Insurance, Black's Law Dictionary (10th ed. 2014) (stating that a certificate of insurance is "a document acknowledging that an insurance policy has been written").
51 Nonetheless, the majority below looked to other provisions. of the WCA-namely, sections 8-41-402 and 8-41-404- and concluded based on these provisions that, "by legislative mandate, certificates of insurance play a critical role in the workers' compensation system" and that this rolé "would be wholly undermined if ... notices of termination need not be provided to certificate holders." Hoff, € 40. Consequently, the majority reasoned that "Colorado's public policy, as described in the Act, requires that courts give effect to the reasonable meaning and purpose of certificates," which, to the majority, meant that it "must ... construe the certificate as requiring notice to the certificate holder of termination of coverage." Id. at 1 41,
152 We respectfully dlsagree Exammmg sections 841-402 and 8-41-404 in the context of the WCA's insurance and lability scheme, we find nothing that warrants imposing the notice requirement that the court of appeals imposed here. A brief journey through these provisions bears this out. .
583 The "comprehensive insurance scheme" set forth in the WCA is. designed to protect injured workers by ensuring the quick and efficient payment of benefits. See Kelly v. Mile Hi Single Ply, Inc., 890 P.2d 1161, 1163 (Colo. 1995); see also § 8-40-102(1). To that end, any "employer" subject to the Act must "secure compensation for all *1224 employees" by maintaining workers' compensation insurance. § 8-44-101(1)(a)-(d). The WCA embraces a broad conception of the term "employer," see Finlay v. Storage Tech. Corp., 764 P.2d 62, 64 (Colo. 1988); see also § 8-40-208 (defining "employer"), and "contains several provisions rendering certain entities who are not 'direct employers of injured persons 'statutory employers' within the meaning of the Act," Krol v. CF&I Steel, 2013 COA 82, ¶ 25, 307 P.3d 1116, 1121.
154 Section 8-41-402 is one of these provisions. Section 841-402 governs repairs to real property and states that every owner of real property who contracts out work done on that property to "any contractor, subcontractor, or person who hires or uses employees in the doing of such work shall be deemed to be an employer under the [WCA]" § 8-41-402(1). Hoff is Hernandez's statutory employer under this provision.
55 Section 8-41-402(1) further prowdes that such owner-employers "shall be Hable" for workers' compensation claims resulting from work-related injuries on their property and "shall insure and keep insured all Hability" for workers' compensation imposed under the Act. Id, To offset this financial responsibility, subsection (1) gives such owner-employers the affirmative right to recover the cost of workers' compensation insurance from the "contractor, subcontractor, or person" that they hire. Id.[7]
~ 156 But, as the majority recognized, see Hoff, T 40, section 8-41-402(2) imposes a conditional limitation on such owner-employers' obligation to pay compensation benefits. Specifically, it provides that; if the "contractor, subcontractor, or person doing or undertaking to do any work for an [owner-employer] ... is also an employer in the doing of such work and ... insures and keeps insured all liability for compensation," then "neither said contractor, subcontractor, or person nor any employees or insurers thereof shall have any right of contribution or action of any kind" against the owner-employer. § 8-41-402(2) (emphases added).
157 Separately, section 841-404 addresses workers' compensation insurance in the specific context of construction work. Section 8-41-404 states in part that "a person who contracts for the performance of construction work on.a construction site shall either provide ... workers' compensation coverage for, or require proof of workers' compensation coverage from, every person with whom he or she has a direct contract to perform construction work on the construction site." § 8-41-404(1)(a) (emphases added). Hoff is "a person who contracts for the performance of construction work on a construction site" for purposes of this provision. See § 841-404(5)(a)-(b) (providing broad definitions of "construction site," in paragraph (a), and "construction work," in paragraph (b), that encompass the roofing work done at Hoffs rental house).[8] Critical to the majority's decision here, the provision defines "proof of workers' compensation coverage" as including a certificate of insurance. See § 8-41-404(5)(c).
58 Unlike section 8-41-402, section 8-41-404 does not render the persons to whom it applies statutory employers or impose liability for injured workers' benefits. Compare *1225 § 8-41-402(1), with § 8-41-404. Rather, persons who fail to provide or obtain proof of insurance as required by section 8-41-404 may be subjected to the administrative fine provisions of section 8-43-409(1)(b) of the WCA. See § 8-41-404(3) (CA violation of subsection (1) of this section is punishable by an administrative fine imposed pursuant to section 8-43-409(1)(b).").[9]
59 Reading sections 841-402 and 8-41-404 together, the majority below determined that "the Act specifically recognizes certificates of insurance as a mechanism to protect an owner from precisely the types of liabilities [ie., Hability for workers' compensation benefits] imposed on Hoff in this case." Hoff, ¶ 42 (citing §§ 8-41-402, 8-41-404(5)(c)). But we see nothing in the Act that supports this statement.
160 Sections 841-402 and 841-404, though related, impose separate and distinct liabilities: the former imposes lability for workers' compensation benefits, § 841-402(1), and the latter imposes liability for administrative fines, § 8-41-404(3). It is only within the framework of section 8-41-404, however, that the legislature has carved out a role for certificates of insurance. As noted above, section 8-41-404 requires that the persons to whom it applies either provide, or obtain proof of, workers' compensation insurance, see § 8-41-404(1)(a), and specifies that 'a certificate qualifies as such proof, see § 8-41-404(5)(c). It then immunizes persons who obtain proof of insurance from liability under its administrative fine provision. See § 8-41-404(1)(c).
161 By contrast, section 841-402 does not mention certificates or any other proof of insurance. Unlike section 841-404, section 8-41-402 does not offer the entities to which it applies the option of obtaining proof of insurance in lieu of supplying insurance. See § 8-41-402(1). Nor does it provide any safe harbor equivalent to section 8-41-404(1)(c). See § 841-402. Although it does immunize an owner-employer from contribution and other lawsuits when the entity it employs is insured "and keeps insured," § 8-41-402(2) (emphasis added), nothing in the statute indicates that this other insurance negates the owner-employer's independent obligation to secure insurance for itself or that any proof of this other insurance can insulate the owner-employer from liability in the event the other insurance lapses, see § 8-41-402.[10]
162 Thus, contrary to the court of appeals' conclusion, nothing in section 8-41-402 or section 8-41-404 states, or even suggests, *1226 that the legislature intended for certificates of insurance to shield owner-employers from liability for workers' compensatién benefits. Because the clear language of these provisions, including the absence, in section 8-41-402, of any exception to an owner-employer's statutory obligations, refutes the majority's interpretation of them, we'reject that interpretation. See Specialty Rests., 281 P.3d at 397.
T68 Moreover, the role certificates play within section 8-41-404 is not undermined if insurers of the policies evidenced by the cer-tiflcates do not notify certificate holders in the event those policies are cancelled. Section 8-41-404(1)(c) provides that, if a person who must secure or require proof of workers' compensation insurance under section 8-41-404(1)(a) "exercises due diligence by ... requiring proof of workers' compensation insurance. as required by this section," then that person "shall not be liable" for the administrative fines imposed under section 8-41-404(3). §8-41-404(1)(c). By its terms, this safe-harbor provision requires only that a person exercise due diligence by obtaining a certificate, See id, Nothing in the provision ties the availability of its protections to the continued validity of the insurance policy underlying that certificate. Id,
64 In sum, we disagree with the majority below regarding the role certificates play under the WCA and find no support for its conclusion that "Colorado's public policy, as described in the Act," required it to construe the certificate here as mandating notice of policy cancellation to the certificate holder. Because no provision of the Act expressly. imposes this requirement either, we conclude that the WCA did not require Pinnacol to notify Alliance when it cancelled MDR's policy.
165 Requiring notice to all certificate holders may be sensible, but it is not our place to legislate what we perceive as a more sensible result. We cannot simply rewrite the statute. See Dove Valley Bus. Park Assocs., Ltd. v. Bd. of Cty. Comm'rs, 945 P.2d 395, 403 (Colo.1997).
#C oof ok
6s Pinnacol was under no obligation to notify Alliance in the event MDR's workers' compensation insurance policy was cancelled. Because Pinnacol did not promise to provide notice, Hoff cannot establish the initial, promise element of her promissory estoppel claim, and her claim must fail. The court of appeals erred in concluding otherwise,
IV. Conclusion
167 Neither the terms of the certificate of insurance nor any provision or public policy contained in the WCA required Pinnacol to notify Alliance in the event MDR's ingurance policy was cancelled, Pinnacol therefore did not "promise" to provide such notice, and Hoffs claim for promissory estoppel must fail for lack of the requisite promise element, For these reasons, we reverse the judgment of the court of appeals.
APPENDIX
*1227 [[Image here]]
JUSTICE GABRIEL concurs.
JUSTICE COATS dissents, and CHIEF JUSTICE RICE and JUSTICE EID join in the dissent.

. This certificate is attached as an appendix ("Appendix") to this opinion. A certificate of insurance is "(a) document acknowledging that an insurance policy has been written, and setting forth fn general terms what the policy covers." Certificate of Insurance, Black's Law Dictionary (10th ed. 2014).

. Neither Alliance nor MDR joined in this appeal or filed an appeal of its own,

. ' The court also was unanimous in determining that Hoff had standing to bring a claim for promissory estoppel. Hoff, N° 2 & n. 1, 14-24. The issue of Hoff's standing is not before us, and we therefore do not address it further.

. The following statement appears at the top of the certificate:
THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DORS NOT ... AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE ... DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REP. RESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.
See Appendix. Later, the certificate also states: "THE INSURANCE AFFORDED BY THE POLI CIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TRRMS, EXCLUSIONS AND CONDE TIONS OF SUCH POLICIES." See id.

. We granted certiorari to review the following issues:
1. Whether the court of appeals erred in holding, contrary to Broderick Inv. Co. v. Strand Nordstrom, 794 P.2d 264 (Colo. App. 1990), and decisions by the Industrial Claim Appeal Office (ICAO) which follow Broderick, that a certificate of insurance evidencing the issuance of a workers' compensation insurance policy required the insurer to inform the certificate holder of the cancellation of the policy, where the certificate states that notice of cancellation "will be delivered in accordance with the policy provisions," and _ the policy only requires the insurer to provide notice of cancellation to the policy holder.
. Whether the court of appeals erred in interpreting section 8-41-404, C.R.S. (2014), to create a public policy mandate that invalidates the "disclaimers and exculpatory language" in a certificate of insurance to require that notice of cancellation of a policy be provided to certificate holders where section 8-44-110, C.R.S. (2014), does not re'quire such notice and the certificate of insurance form containing such language was approved by the commissioner of insurance pursuant to section 8-44-102, C.R.S. (2013).

. As a result, we need not consider the broader issue of the legal status of certificates of insurance that contain such disclaimers, or the parties' related contentions concerning Broderick, 794 P.2d 264. We note that courts in other jurisdictions have reached divergent conclusions on the question of whether-and if so, under what circumstances-such certificates can give rise to legal rights, compare, e.g., Criterion Leasing Grp. v. Gulf Coast Plastering & Drywall, 582 So.2d 799, 800-01 (Fla. Dist. Ct. App. 1991) (per curiam) (certificate gave rise to legal rights), Bucon, Inc. v. Pa. Mfg. Ass'n Ins. Co., 151 A.D.2d 207, 547 N.Y.S.2d 925, 927 (1989) (same), and Marlin v. Wetzel Cty. Bd. of Educ., 212 W.Va. 215, 569 S.E.2d 462, 469-73 (2002) (same), with T.H.E. Ins. Co. v. City of Alton, 227 F.3d 802, 805-06 (7th Cir. 2000) (certificate did not give rise to legal rights), W. Am. Ins. Co. v. Meridian Mut. Ins. Co., 230 Mich.App. 305, 583 N.W.2d 548, 550-51 (1998) (per curiam) (same), and Bradley Real Estate Tr. v. Plummer & Rowe Ins. Agency, Inc., 136 N.H. 1, 609 A.2d 1233, 1234-35 (1992) (same), and that Broderick belongs to the latter camp, see 794 P.2d at 265-67. We have not yet weighed in on this larger question, and because this case does not require it, we decline to do so today.

. Itis worth noting that this subsection also says the WCA does not apply to "the owner or occupant, or both, of residential real property which meets the definition of a 'qualified residence' under [the Internal Revenue Code], who contracts out any work done to the property.. § 8-41-402(1). The apphcable section of the Code, in turn, defines ' 'qualified residence" as including a taxpayer's principal residence. See 26 U.S.C. § 163(h)(4)(A)(i)(I) (2012). Thus, the qualified-residence exception effectively shields an ordinary homeowner from workers' compensation liability arising from work done to the home in which he or she lives. This exception does not apply here because Hoff uses the house where Hernandez's injuries occurred as a rental property.

. Like section 8-41-402, section 8-41-404 includes a "qualified residence" exception and therefore does not apply to a homeowner contracting to have work done to the home in which he or she lives. See § 8-41-404(1)(a), (4)(@)(D). But, as noted above, Hoff does not qualify for this exception. Moreover, section 8-41-404 also does not apply to an owner of real property who hires someone "specifically to do routine repair and maintenance" on that property. § 8-41-404(4)(a)(II). Here, the ALJ found that this exception does not apply to Hoff because the roof repair job was not "routine." Hoff does not challenge this determination, and we therefore accept it for purposes of this appeal.

. Section 8-43-409(1)(b) imposes fines of either a maximum of $250, for an initial violation, or a minimum of $250 and a maximum of $500, for any subsequent violation, "[fJor every day that the employer fails or has failed to insure or to keep the insurance required by [the WCA." See § 8-43-409(1)(b)(D-(I).

. Although this interpretation could, in theory, lead some owner-employers to conclude that their safest bet would be to secure workers' compensation insurance of their own, we do not see such a result as inevitable. For example, an owner-employer might instead choose to be more proactive in verifying that the coverage identified in a certificate remains in effect on the date work is to be performed. This the owner-employer can do with no trouble at all: at the legislature's behest, the Division of Workers' Compensation has created a searchable online database through which anyone can confirm that a given employer has insurance in effect on the date the search is conducted. See Colo. Dep't of Labor & Emp't, Insurance Coverage, https;//perma.cco/6FUK-RK 22; see also § 8-47-111(2) ("[The division shall develop a procedure for verifying whether or not all employers doing business in ... Colorado comply with the [insurance] requirements of [the WCA]."). And even where an owner-employer opts to acquire insurance, section 8-41-402 expressly allows it to recover the cost of that insurance from the entity it hires. See § 8-41-402(1). Moreover, to the extent there may be circumstances in which both the owner-employer and its hired entity obtain insurance, we note that this consequence fully comports with the fundamental goal of the WCA: "to assure the quick and efficient delivery of ... benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation." § 8-40-102(1). Not only does encouraging both statutory and direct employers to maintain coverage more adequately protect injured workers, it also ensures that those employers receive the primary benefit that the WCA is designed to give them-namely, immunity from common-law tort liability. See Curtiss v. GSX Corp. of Colo. 774 P.2d 873, 874-75 (Colo, 1989). Indeed, the legislature has expressly declared its belief that "it is in the best interests of the public to assure that all employers who fall under the provisions of [the WCA] have in effect current policies of insurance or self-insurance for workers' compensation liability." § 8-47-111(1) (emphasis added).